**Robert JONES, Plaintiff,**

v.

**Officer A. HARRIS, et al., Defendants.**

**No. 08 Civ. 4003(CM).**

United States District Court, S.D. New York.

Oct. 13, 2009.

Robert Jones, Ossining, NY, pro se.

Frederick Hongyee Wen, Attorney General of the State of New York, New York, NY, for Defendants.

MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS THE COMPLAINT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND HIS MOTION IN LIMINE AS PREMATURE; AND ASKING FOR FURTHER BRIEFING ON IDENTIFIED QUESTIONS

McMAHON, District Judge:

Plaintiff Robert Jones has been in the custody of the New York State Department of Correctional Services (DOCS) since 1990. He is currently incarcerated at the Sing Sing Correctional Facility in Ossining, New York. He filed the instant action on May 20, 2008, The complaint alleges principally that his cell was searched several times in late 2007 to retaliate against him for exercising his First Amendment rights and in violation of his Eighth and Fourteenth Amendment rights. Plaintiff also alleges various deprivations of due process, principally with respect to certain property of his that was seized from his cell during one of the aforementioned searches.

All defendants move to dismiss the complaint for failure to exhaust administrative remedies (as to some claims) and for failure to stale a claim (as to all claims). Defendant Marshall moves to dismiss the complaint as against him for failure to allege personal involvement in any of the events in suit. And all defendants seek dismissal of any claims for money damages that are asserted against them in their official capacities. (Docket No. 13).

In keeping with this Court's rules on the issue of qualified immunity, defendants, having moved for dismissal or summary judgment on that issue as well (Docket No. 22), have deposed plaintiff (who is proceeding *pro se* ) in order to flesh out the details of his claims. On January 30, 2009, they served a supplemental brief in support of their motion to dismiss plaintiff's claims on the basis of qualified immunity. This brief alludes to plaintiff's testimony, which does tend to clarify his often confusing *pro se* complaint. The complaint is deemed amended to include the factual statements made under oath by plaintiff concerning the matters in suit.

For the reasons set forth below, the complaint is dismissed in substantial part. However, plaintiff's claim against Allen and Marshall that he was deprived of three items of property without due process of law cannot be dismissed until there has been briefing on specific questions identified by the court in this opinion. The parties will have thirty days from today to file additional briefs.

On or about August 24, 2009, plaintiff filed a document labeled "Motion for Summary Judgment" (Docket No. 35). It is actually not a motion for summary judgment. As best the court can decipher it, it is a motion for leave to amend the complaint to "adjust the relief sought" in the *ad damnum* clause, as well as to allege some sort of claim arising out of events

that took place in January 2009—well after the events in suit.

The motion to amend the *ad damnum* clause is denied as unnecessary. Plaintiff is advised that there is no need for him to amend his request for relief; if his one remaining claim survives the motion to dismiss, he will be free to prove whatever damages he can against any remaining defendant.

To the extent that the motion can be construed as one to amend the complaint to add claims relating to something that took place well over a year after the events in suit, the motion is denied because plaintiff has not demonstrated exhaustion of administrative remedies, and because the new allegations do not make out any constitutional violation.

### STATEMENT OF FACTS ALLEGED

The following facts are alleged by plaintiff in his complaint or are testified to in his deposition. Where something alleged in the pleading is contradicted by plaintiffs deposition testimony (which the Court deems incorporated into the complaint), I will note the same. When defendant relies on material that cannot be considered on a motion to dismiss, I will also note it.

### The October 26, 2007 Cell Search

Plaintiff's cell was searched by defendant Harris, a corrections officer with DOCS who works at Sing Sing. Plaintiff alleges that Harris conducted this search in retaliation for plaintiff's refusal to accede to Harris's request for sexual favors, which Harris allegedly made in August 2007. According to plaintiff, the search "tore [the cell] to pieces" in violation of DOCS directives # 4910 and 4091. Plaintiff also alleges that Harris confiscated certain of his personal property during the search.

Plaintiff did not file a grievance protesting any sexual harassment in August 2007. However, on October 27, he approached Sgt. Mejia and complained about the August incident, the allegedly retaliatory search and the removal of his personal property from the cell. Plaintiff alleges that he got his personal property back only by agreeing to drop the sexual harassment complaint against Harris. Plaintiff testified at his deposition that he also mentioned his sexual harassment complaint against Harris in his letter to the Inspector General.

### The November 19, 2007 Cell Search

On November 19, 2007—while plaintiff was out of his cell watching a movie—he contends that Harris again illegally searched and totally demolished his cell, breaking his radio, all in violation of the same DOCS directives. Plaintiff further alleges that Harris took his lamp and headphones during the search and ordered another corrections officer, A. Zelaya (who is not a defendant in this action), to write a contraband slip and misbehavior report for the properly taken.

Plaintiff was scheduled for a disciplinary hearing on December 10. He alleges that defendant Allen was directed to destroy plaintiff's seized property on December 6, so that it could not be returned to him. Plaintiff charges that the hearing officer offered to compromise the matter by issuing a reprimand and returning plaintiff's property; when he was told that the property had been destroyed, he "was very surprised, and based on that the charges were dismissed."

Defendants append records to their motion tending to show that C.O. Zelaya actually conducted the search. This is of no moment on a motion to dismiss; I will assume, for purposes of the motion, that Harris actually conducted the search.

### The December 9, 2007 Cell Search

Harris allegedly "searched and trashed" plaintiff's cell a third time, on December 9.

There is no allegation that any of plaintiff's property was destroyed, or that he suffered any loss as a result of this search.

At his deposition, plaintiff testified that he was not present during the search and had no evidence to prove that Harris had either ordered or conducted the search. Plaintiff ascribed his "belief" that Harris had something to do with the search to the fact that his cell was left in "shambles"— which he identified as Harris' "signature cell search."

Prison records indicate that a C.O Singletary conducted the search but did not confiscate any property; this information is noted but will not be considered on the motion.

**Plaintiff's Grievances**

Plaintiff filed a grievance (SS–43759–07) on November 26, 2007. In it, plaintiff stated that he had problems for several months with C.O. Harris, and that Harris had retaliated for his complaint to the block sergeant by getting another officer to trash his cell during a search and confiscating many of his personal belongings. This last reference is obviously to the November 19 search. The grievance was denied after a hearing on December 18, 2007. Plaintiff appealed on January 8, 2008. After the Superintendent reached the same result, plaintiff's final appeal was denied by the Central Office Review Committee (CORC) as without merit. Plaintiff was advised that he had the right to proceed administratively with a claim for any lost or stolen items.

Plaintiff filed a second grievance (SS–43890–07) on December 12, 2007. This grievance complains about the continuation of a pattern of harassment while tearing up his cell during an unauthorized cell search on November 19. He complained

that Officers Harris and Zelaya broke his radio, confiscated his lamp and headphones (claiming that they had been altered), and filed the aforementioned misbehavior report. Plaintiff also complained that he did not get his property back, even though the misbehavior report was dismissed because the officers did not show up for his hearing.[1] He further complained that his cell had been searched by Harris in October, November and December, Plaintiff asked for compensation for his property and an order banning Harris from working in his housing unit, "because of the nature of the harassment and threats." The grievance was denied by IGRC on December 24, 2007. After the Superintendent reached the same result on January 17, 2008, plaintiff appealed to CORC, which affirmed on March 12, 2008.

The files developed and maintained at Sing Sing in connection with these grievances are contained in the record as Exhibits B and C appended to defendants' motion to dismiss, Because plaintiff has affirmatively pleaded that he exhausted his administrative remedies, the court can and will consider the contents of those files (which are prepared and maintained in the ordinary course of business at Sing Sing) in deciding the motion to dismiss.

The CORC database shows no other grievances filed by plaintiff for the period encompassed by this action. Plaintiff does not affirmatively allege that he filed any other grievance. He does allege that he filed a claim for reimbursement for his personal property; I will deal with that below.

**Destruction of Plaintiff's Personal Property**

Plaintiff pleads that defendant Allen disposed of his personal property at the be-

---

1. This is not the same hearing as the December 18 hearing, which was allegedly attended by C.O. Allen.

hest of plaintiff Harris. At his deposition, plaintiff testified that this, too, was pure supposition on his part; he knew of no facts showing that Harris in fact had anything to do with Allen's disposal of his property.

Plaintiff also admitted that, on or about December 6, 2007, he (plaintiff) filled out and signed Form # 2068, "Authorization for Disposal of Personal Property," in which he elected to have the lamp and headphones (which the institution insists were "altered") destroyed. Defendant Allen signed the form as the employee witness. However, plaintiff contends that he was "coerced" into signing the form when Allen would not agree to "place the property on the shelf and give me 30 days for the opportunity to run his decision to the grievance mechanism." (EBT of R. Jones ("Pl. EBT") 120:5–16.)

As indicated in CORC's disposition of Grievance SS–43890–07, plaintiff actually filed an administrative request for reimbursement for his property (date not specified, claim # 106–07). This request was filed in accordance with 7 NYCRR Section 1700.3. His request was denied. It appears that Allen was the person who denied the request for reimbursement.

CORC's order of March 12, 2008 advised plaintiff that he had the right to appeal the denial of his reimbursement claim in accordance with Directive # 2733 (referenced in 7 NYCRR § 1700.3). The court has not located in the record any paperwork that was created in connection with any such appeal. However, plaintiff affirmatively alleges that Superintendent Marshall did not respond to his appeal; the fair implication is that plaintiff filed an appeal (or at least contends that he did). Exhaustion of administrative remedies through the superintendent level is a prerequisite for bringing suit in the New York Court of Claims for reimbursement. *See* N.Y. Court of Claims Act § 10(9).

**December 18, 2007, Inmate Misbehavior Report**

At plaintiff's December 18 hearing on his first grievance, he alleges that Allen became agitated when the hearing officer made some reference to plaintiff's claim that his personal property had been destroyed without authorization. Plaintiff insisted to the hearing officer that Allen lacked authority to destroy property that comprised evidence in an ongoing disciplinary proceeding. That evening, Allen issued a misbehavior report to plaintiff for lying. The misbehavior report accuses plaintiff of lying when he said that Sgt. Mejia promised to give plaintiffs property back; the sergeant denied making any such promise. (Declaration of Frederick H. Wen in Support of Defendants' Supplemental Motion for Summary Judgment Based on Qualified Immunity ("Wen Decl.") Ex. I.)

Plaintiff had a Superintendent's hearing on this charge of lying. He was found not guilty of the charge. (Wen Decl. Ex. F.) Plaintiff testified that he was not disciplined for lying.

**Summary of Plaintiff's Claims**

It appears to the court that plaintiff is asserting, or attempting to assert, the following claims:

1. A claim that the three searches of his cell, which are described above, were undertaken by Harris (or ordered by him) in retaliation for (a) plaintiff's complaining to a Sgt. Mejia about Harris' harassing behavior, and/or (b) plaintiff's refusal to respond to a sexual overture made by Harris in August 2007;

2. A claim that the same three searches violate the Eighth Amendment;

3. A claim that plaintiff's property was wrongfully seized in retaliation as described in paragraph (1) above;

4. A claim that plaintiff's property was seized and destroyed without due process of law;

5. A claim that two misbehavior reports were filed against plaintiff in retaliation as described in paragraph (1) above;

6. A claim that Harris' sexual overture/proposition violated the Eighth Amendment;

7. A claim that plaintiff was deprived of his property and denied reimbursement for the same without due process of law;

8. A supervisory liability claim against Superintendent Marshall;

9. A claim for punitive damages.

### DISCUSSION

**I. Standard of Review**

■ Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is weighted in favor of the plaintiff. "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir.1991). The court is also required to read a complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff, *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). This is especially true when the plaintiff is proceeding *pro se. Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation marks, citations, and alterations omitted). Indeed, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556–57, 127 S.Ct. 1955).

In deciding a motion to dismiss, this court may consider the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit. *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir.2000); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir.1996).

■ Defendants have also moved, in the alternative, for summary judgment dismissing plaintiffs' claims on the ground of qualified immunity. Government officials performing discretionary functions are entitled to qualified immunity "from federal constitutional claims ... as long as their

actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ In *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court indicated that the availability of qualified immunity ought to be decided by the Court at the earliest possible opportunity—preferably at the outset of the case, which is a point at which plaintiff's well pleaded allegations are assumed to be true, and defendant's version of the facts is immaterial. Thus, as the Second Circuit explained in *Stephenson v. John Doe, Detective*, 332 F.3d 68 (2d Cir. 2003), when determining a motion to dismiss on qualified immunity grounds in advance of full merits discovery, the plaintiff's version of the facts is presumed to be true, and the question to be answered is whether a reasonable Government officer, confronted with the facts as alleged by plaintiff, could reasonably have believed that his actions did not violate some settled constitutional right.

■ The inquiry is a two-step one, although the Supreme Court has recently given courts permission to ask the questions in whatever order seems most appropriate. The court must determine: (1) whether, taking the facts in the light most favorable to the party asserting the injury, a constitutional infraction was committed. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151, and (2) whether a reasonable official in defendant's position (as that position is described by plaintiff) ought to have known that he was violating plaintiff's constitutional rights by doing what plaintiff alleges he did. Ordinarily, the relevant inquiry will be whether the law is in fact well-settled—because if it is, "the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Claims that a public officer made a reasonable mistake of fact "go to the question of whether the plaintiff's constitutional rights were violated, not the question of whether the officer was entitled to qualified immunity." *Stephenson*, 332 F.3d at 78 (*citing Saucier*, 533 U.S. at 205–206, 121 S.Ct. 2151).

■ It is no defense to a claim of qualified immunity that the defendant did not do what plaintiff said he did. At this early stage of a lawsuit, before discovery takes place, we are presuming that the plaintiff's version of events is true, so a court cannot take into account assertions by the accused officer that contradict the plaintiff's allegations. Nothing in *Saucier* can be read to deprive the plaintiff of his Seventh Amendment right to have a jury resolve all disputed issues of material fact. If plaintiff's version of the facts is wrong and defendant's is correct, then the defendant will prevail, not on the ground of qualified immunity, but because he did nothing wrong.

## II. Plaintiff's Eighth Amendment Claims are Dismissed

To the extent that plaintiff purports to assert violations of the Eighth Amendment, his complaint is deficient and must be dismissed.

### A. The Cell Searches

■ Periodic cell searches are so much an integral part of prison life that in *Hudson v. Palmer*, 468 U.S. 517, 527–28, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the United States Supreme Court held that a prisoner has no reasonable expectation of privacy in his prison cell. Even cell searches "conducted solely for harassment" do not implicate the Fourth Amendment, *Willis v. Artuz*, 301 F.3d 65, 68–9

(2d Cir.2002). The only constitutional limit on the search of a prison cell is imposed by the Eighth Amendment's bar against cruel and unusual punishment. If a cell search qualifies as cruel and unusual punishment—which is to say, if the cell search lacked any legitimate penological interest and was intended solely to harass—then it may be actionable. *See Lashley v. Wakefield*, 367 F.Supp.2d 461, 470 (W.D.N.Y. 2005).

■■■■ To plead an Eighth Amendment violation, a prisoner plaintiff must allege that a defendant "ordered the searches with the specific intent to cause plaintiff harm and that the searches in fact caused him harm." *Id. (citing Hudson v. McMillian*, 503 U.S. 1, 7–8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). The deprivation alleged by the prisoner must be sufficiently serious in objective terms such that it suggests denial of the minimal civilized measure of life's necessities (the objective element). And because only the unnecessary and wanton infliction of pain implicates the Eighth Amendment, the prisoner must assert facts indicating that the responsible prison official had a sufficiently culpable state of mind amounting to at least deliberate indifference to his constitutional rights (the subjective element). The absence of specific factual allegations tending to support *either* the objective or the subjective element is fatal to a prisoner's Eighth Amendment claim. *See Hudson v. Lockhart*, 554 F.Supp.2d 494, 497 (S.D.N.Y.2008).

■■■■ Plaintiff alleges that Harris conducted or ordered the October 26, November 19 and December 9 cell searches for non-penological reasons—namely, to harass and retaliate against him for rebuffing Harris' sexual advance back in August 2007. as well as to punish plaintiff for complaining about Harris to Mejia.

The allegation that Harris acted with intent to harass and retaliate meets the subjective element of pleading an Eighth Amendment claim. However, plaintiff's allegations do not come close to meeting the objective element of an Eighth Amendment claim.

Plaintiff complains of three retaliatory cell searches, conducted over the span of six weeks. But nothing in his pleading suggests that he would not be subjected to three cell searches over a like period in the ordinary course of prison life. For example, plaintiff does not plead that, under some policy in effect at Sing Sing during the fall of 2007, prisoners could only be subjected to a random cell search one every six weeks or once every eight weeks, or significantly less frequently than once every three weeks. Absent such an allegation, it cannot be said that having one's cell searched on October 26, November 19 and December 9 is more than a prisoner should have to tolerate before the searches qualify as cruel and unusual punishment. Put otherwise, plaintiff has failed to allege that the searches (whoever conducted or ordered them, or for whatever reason) were so much a departure from the norm as to be greater than a *de minimis* disruption, or to qualify as conduct that would deter an individual of ordinary firmness from exercising his constitutional rights. And, indeed, plaintiff's own pleading establishes beyond peradventure that he was not deterred from exercising his constitutional rights; he filed grievances in connection with the searches.

So assuming *arguendo* that plaintiff's allegations are true, and that Harris either conducted or ordered searches of plaintiff's cell on October 26, November 19 and December 9 out of pique over plaintiff's rebuff and subsequent complaint, it cannot be said that three searches in six weeks rises to the level of cruel and unusual punishment.

## B. The Alleged Sexual Harassment

■ In *Boddie v. Schnieder*, 105 F.3d 857 (2d Cir.1997), the Second Circuit held that "sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Id.* at 860–61. However, the court also held that the "isolated episodes of harassment and touching" alleged by the plaintiff in that case "do not involve a harm of federal constitutional proportions." *Id.* at 861. For that reason, an allegation that a corrections officer verbally propositioned a prisoner on a single occasion, without engaging in any physical activity, simply does not rise to the level of an Eighth Amendment violation. This is true even though sexual harassment in any form, and no matter how minor the incident, is always despicable.[2]

■ At the very least, Harris would appear to be entitled to a qualified immunity dismissal of a claim that a single sexual proposition, without more, violates the Eighth Amendment. It is well-settled that verbal harassment by a corrections officer, inexcusable though it be, does not rise to the level of a constitutional violation. *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.1986). Several district courts have considered the issue, and have held that verbal sexual harassment of a prisoner, without physical contact, does not violate the Eighth Amendment. *See, e.g.,* *Pagan v. Brown*, No. 08 Civ. 0724, 2009 WL 2581572, at *10 (N.D.N.Y. Aug. 19, 2009) ("Plaintiff's verbal harassment claims, sexual or otherwise, even if true, do not rise to the level of an Eighth Amendment claim"); *Seymore v. Joslyn*, No. 06 Civ. 1010, 2009 WL 995620, at *2 (N.D.N.Y. April 14, 2009) (Plaintiff "alleges at most an amorous proposition, and no

physical contact whatsoever. As a matter of law, this is insufficient to state a constitutional violation"); *Curtis v. Phillips*, No. 05 Civ. 0698, 2005 WL 3299488, at *2 (W.D.N.Y. Nov. 30, 2005) ("[inmate] plaintiff's claim herein that he was propositioned for sex on four separate occasions by a female social worker cannot form the basis of an Eighth Amendment claim"); *Montero v. Crusie*, 153 F.Supp.2d 368, 376 (S.D.N.Y.2001) ("[Plaintiff] alleged sexual solicitations and alleged death threats. Verbal threats or harassment, unless accompanied by physical force or the present ability to effectuate the threat, are not actionable under § 1983."); *Young v. Coughlin*, 1998 WL 32518, at *7 (S.D.N.Y. Jan. 29, 1998) (*citing Boddie v. Schnieder*, 105 F.3d 857, 860–61 (2d Cir.1997), for the proposition that "while 'sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment,' verbal harassment by itself does not violate the Eighth Amendment.").

■ Moreover, plaintiff failed to grieve the alleged sexual overture from Harris. The court has perused the two grievances, and nothing in them can be interpreted as asserting any claim that Harris ordered a retaliatory search because plaintiff refused a sexual advance from Harris. Indeed, plaintiff does not mention the purported sexual harassment in either grievance. Under the Prison Litigation Reform Act, Pub. L. No. 104–134, 110 Stat. 1321 (1996), a prisoner's failure to grieve a complaint against a corrections official precludes him from suing on that complaint. *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

Plaintiff also does not plead any facts tending to show that he was prevented

---

**2.** I say this without the slightest idea whether Officer Harris did what plaintiff alleges. If he did not, it is equally true that being wrongly

accused of engaging in sexual harassment is despicable.

from filing a grievance on that issue. Plaintiff obviously knows how to make a court aware of his claim that he was prevented from grieving an issue; he does so when he asserts that he was coerced into signing a form authorizing the destruction of his property in order to thwart him from filing a grievance that might result in his getting the property back (see discussion below in connection with plaintiff's Fourteenth Amendment claim). By failing either to plead or to call the court's attention to any reason why he was unable to grieve the alleged sexual harassment, plaintiff has forfeited any claim that he was prevented, by Harris or by anyone acting on his behalf or at his behest, from doing so.

For any and all of the above reasons, any Eighth Amendment claim arising out of plaintiff's contention that Harris propositioned him must be dismissed.

## III. Plaintiff's Retaliation Claims Are Dismissed

 Retaliation, while not specifically mentioned in the Constitution, is actionable in certain circumstances precisely because it can chill the exercise of constitutionally protected rights.

Here, plaintiff alleges that defendants Harris and Allen committed or directed a number of actions against him to retaliate for his complaints to Sgt. Mejia about a pattern of harassment by Harris, and/or to retaliate for plaintiff's rejection of Harris purported sexual advance.

 Courts have been cautioned to approach First Amendment retaliation claims by prisoners with skepticism and particular care. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.2003) (*citing Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds by Swierkiewicz v. Sorema, NA*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). However, that does not mean that such claims are auto-matically to be dismissed. Such a claim can survive a defendant's motion to dismiss, but only if plaintiff alleges *facts* tending to establish that (1) the speech or conduct that led to the allegedly retaliatory conduct is the sort of speech or conduct that is protected by the Constitution; (2) defendant(s) took adverse action against the plaintiff; and (3) there is a causal connection between the protected speech or activity and the adverse action. These allegations may not be conclusory; they must have some basis in specific facts that are not inherently implausible on their face. *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *South Cherry Street LLC v. Hennessee Group LLC*, 573 F.3d 98, 110 (2d Cir.2009).

 Furthermore, only retaliatory conduct that would deter a similarly-situated individual of ordinary firmness from exercising his constitutional rights constitutes an adverse action; if a retaliatory act is *de minimis*, it falls outside the ambit of constitutional protection. *Davis*, 320 F.3d at 353 (*citing Dawes*, 239 F.3d 489), In this regard, prisoners may be required to tolerate more than public employees or average citizens before a purportedly retaliatory action taken against them is considered adverse, *Thaddeus–X v. Blatter*, 175 F.3d 378, 386–87 (6th Cir., 1999) (en banc) (per curiam), cited with approval by *Davis*, 320 F.3d 346.

Obviously, a plaintiff need not *prove* his allegations to survive a motion to dismiss. However, because plaintiff has been deposed in order to flesh out exactly what he is alleging (which can be particularly helpful when deciding whether a plaintiff has alleged any specific facts that are not implausible on their face in this post-*Twombly/Iqbal* era), we know what he contends. The question is whether what he contends is sufficient to withstand a motion to dismiss. It is not.

## A. Cell Searches as Retaliation for Plaintiff's Complaints about Harris

Three of the allegedly retaliatory actions were searches of plaintiff's cell.

Plaintiff contends that Harris' October 26 cell search was part of a pattern of harassment against him by Harris, and that Zelaya's November 19 cell search and the December 9 search (which he asserts was carried out by Harris, albeit without any hard evidence that this is so) were conducted or ordered by Harris to retaliate for plaintiff's complaining to Sgt. Mejia about Harris' harassment (and, presumably, for the filing of the November 26, 2007 grievance), Plaintiff sues Harris for retaliation.

■■■■ Complaining to a superior officer about a subordinate officer's misbehavior, while not equivalent to the filing of a grievance, is conduct at least arguably protected by the First Amendment.[3] However, neither the United States Supreme Court nor the Second Circuit has ever held that a cell search can be the basis of a First Amendment retaliation claim. As noted above, courts have long recognized that periodic cell searches are such an integral part of prison life that only cell searches that rise to the level of an Eighth Amendment violation are actionable. This Court has already dismissed plaintiff's claim that three cell searches, conducted over the span of six weeks, violates the Eighth Amendment, because nothing in plaintiff's pleading or in his testimony suggests that a prisoner at Sing Sing would not be subjected to three cell searches over a like period in the ordinary course of prison life. If a prisoner, who enjoys no Fourth Amendment privacy right in his cell, can be expected to tolerate such interruptions in the ordinary course, it is hard to see how the three searches of which plaintiff complains, taken together, would qualify as an "adverse action" for purposes of First Amendment retaliation analysis.

■■■■ Plaintiff alleges that the retaliatory searches resulted in the seizure of some of his property and the "trashing" of his cell. Perhaps he is suggesting that these searches were unusually punitive and so were out of the ordinary. But plaintiff alleges no facts tending to show that, in an ordinary random cell search, property is not seized and cells are not turned upside down and inside out, It is to be expected that cell searches will disrupt, not only the prisoner's life, but also the living conditions inside the cell; and since one purpose of a cell search is to locate and recover contraband, the court cannot turn a blind eye to the fact that prisoner property is sometimes seized when cells are searched.

Finally, plaintiff has failed to allege any facts lending to show that the searches (regardless of who conducted or ordered them or how disruptive they were) were so much a departure from the norm as to be greater than a *de minimis* disruption, or to qualify as conduct that would deter an individual of ordinary firmness from exercising his constitutional rights.

At a minimum, Harris would be entitled to qualified immunity on a claim of First Amendment retaliation relating to the cell searches, since it is not well-settled that cell searches can be the subject of a First Amendment retaliation (as opposed to an Eighth Amendment cruel-and-unusual punishment) claim.

---

3. Filing a grievance is clearly protected by the First Amendment. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir.1996).

## B. Cell Searches as Retaliation for Plaintiffs Rebuff of Sexual Advance

The above analysis pertains to this aspect of plaintiff's retaliation claim. It, too, must be dismissed.

## C. Destruction of Plaintiff's Property as Retaliation

Plaintiff alleges that defendant Allen, at the behest of Harris, destroyed his property without authorization on or about December 6, 2007. Plaintiff claims that this was part and parcel of the pattern of harassment by Harris. (It should be noted that this is a claim against Harris, not Allen; there is a separate claim against Allen for unauthorized destruction of property, but that is not a retaliation claim).

■ The unauthorized destruction of prisoner's property can form the basis for a retaliation claim. *Soto v. Iacavino*, No. 01 Civ. 5850, 2003 WL 21281762, at *2 (S.D.N.Y. June 4, 2003); *Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir.2002).

■ Plaintiff has admitted that he signed a form authorizing the destruction of his property. Ordinarily that would end the First Amendment retaliation inquiry, since a defendant cannot have taken an adverse action against a prisoner if the prisoner authorized the action. *Pledger v. Hudson*, No. 99 Civ. 2167, 2005 WL 736228, at *4 (S.D.N.Y. March 31, 2005) (prisoner could not claim retaliation for removal from employment position when he admitted leaving position voluntarily). However, plaintiff testified that he was "coerced" into signing that form. As will be seen below, this testimony raises issues about the viability of plaintiff's claim against Allen for the unauthorized destruction of his property.

■ It does not, however, raise any issue concerning plaintiff's claim *against Harris* for *retaliatory* destruction of the same property. The only issue before this Court in connection with the retaliation claim against Harris is whether the complaint (and plaintiff's testimony fleshing it out) pleads any non-conclusory facts tending to show that Allen destroyed the property at the behest of Harris, as part of Harris' retaliation for the complaints discussed above. The answer is that neither the complaint nor the documents appended to the complaint plead any such facts.

Deeming the complaint to be amended by plaintiff's deposition testimony (as this Court does in this *pro se* case) does not overcome this problem. Plaintiff testified that Harris somehow got Allen—because they "were buddies"—to destroy his property so that it would not be given back to him "in the event the hearing officer decided he might want to give it back to me, that that wouldn't occur" (Pl. EBT Tr. 118: 2–27.) However, plaintiff then admitted under oath that he has no evidence whatsoever that Harris ordered Alien to destroy his property. (Pl. EBT Tr. 163: 17–20.) [4] Plaintiff has, therefore, failed to plead any specific and non-conclusory fact tending to show that Harris ordered Allen to destroy his property—let alone that Harris did so to retaliate against plaintiff for complaining about the October 16 cell search and/or the purported instance of sexual harassment. This claim is based on pure supposition. It must, therefore, be dismissed.

## D. Filing False Misconduct Reports as Retaliation

Plaintiff identifies two separate false reports that were allegedly filed against him:

---

**4.** Plaintiff's admission that he has no evidence to support his theory about Harris' involvement in the destruction of the property would make it appropriate to grant summary judgment in favor of Harris on this claim as well, were such a motion pending.

the misbehavior report filed by Zelaya on November 19 and the "lying" report filed by defendant Allen on December 18. In connection with the former report, his claim is that Harris caused Zelaya (who is not a defendant) to write the false report. In connection with the latter, he claims that Allen was retaliating for plaintiff's filing of a claim for reimbursement for the destruction of his property, Plaintiff was found not guilty of both violations.

A prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report. *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997). Therefore, to the extent that plaintiff is seeking damages because he was subjected to accusations that turned out not to stand up under scrutiny, he fails to make out an actionable claim as a matter of law.

In his second grievance (read most favorably to plaintiff—and it is a liberal reading), Brown asserts that Harris induced Zelaya to write him up (falsely) as part of his (Harris') campaign of harassment and retaliation against plaintiff. Of course, plaintiff (who has been deposed) can point to not a single specific fact tending to show that Harris asked or persuaded Zelaya to do anything at all. But if plaintiff enjoys no constitutional protection against being written up falsely, then any claim that he was falsely written up out of a desire to retaliate against him for complaining to Mejia does not rise to the level of a constitutional violation that is actionable under § 1983.

Plaintiff filed his second and final grievance on December 12. Allen did not file the misbehavior report in which he accused plaintiff of lying until December 18. Therefore, plaintiff has not exhausted his administrative remedies with respect to any claim that Allen's December 18 misbehavior report constituted retaliation for plaintiffs complaints about Harris or for his tiling of grievances in November and December 2007.

All of plaintiff's First Amendment retaliation claims against defendants Allen and Harris are, therefore, dismissed.

## IV. Plaintiff's Due Process Deprivation of Property Claim Is Dismissed

Plaintiff's rather vague Fourteenth Amendment allegations appear to include (1) a claim that he was deprived of three items of property (which were seized from his cell, allegedly by Harris, and eventually destroyed, apparently because someone concluded that it was contraband) without due process of law, and (2) a claim that prison officials (including specifically Allen and Superintendent Marshall) failed to deal appropriately with his effort to obtain reimbursement for the property, which he believes was wrongfully destroyed.

Defendants argue that plaintiff has failed to exhaust his due process claim administratively.

I do not agree that plaintiff failed to grieve his claims with respect to the wrongful destruction of his lamp, radio and headphones. While the two grievances that plaintiff filed do not use the words "due process of law," plaintiff refers to the loss of his property in both grievances, Moreover, in his second grievance plaintiff specifically requests compensation for the destruction of his radio and the loss of his headphones and lamp. There is no dispute that plaintiff followed the full appeals process with respect to this particular grievance.

Additionally, plaintiff alleges that he was prevented from filing a third grievance in connection with his quest to get his property back. Plaintiff also alleges that he asked Allen not to destroy his property for 30 days so that he could grieve the deter-

mination that it was contraband, and that Allen refused to permit plaintiff to file that grievance and destroyed the property, thereby preventing it from being returned. None of this may be true, but the facts have yet to be developed, and in this Circuit, we tend to give prisoners who claim that they were unable to grieve the benefit of the doubt, *Porter* notwithstanding. *See Hemphill v. New York,* 380 F.3d 680 (2d Cir.2004) (remanding to district court for determination of "whether some seemingly available remedies were rendered unavailable" by defendants' conduct). Defendants will have ample opportunity to establish that plaintiff's version of events is false; they may even be able to obtain summary judgment after the record is augmented.

In sum, for purposes of a pre-answer motion to dismiss pursuant to Rule 12(b)(6), plaintiff has alleged sufficient facts to indicate that he exhausted administrative remedies with respect to his claim that his property was destroyed without due process of law or that he was prevented from doing so.

 To establish a violation of the Due Process Clause, a plaintiff must allege facts tending to show that he possessed a property interest of which he was deprived without due process of law. Furthermore, where there is an adequate post-deprivation remedy to redress a seizure of property, no failure of due process claim lies— even if plaintiff was deprived of his property intentionally and without authorization. *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

 The court takes judicial notice of the fact that DOCS has a procedure for a prisoner to follow if he believes he has been wrongfully deprived of property. By filing an administrative claim pursuant to 7 NYCRR § 1700.3, he can obtain reim-

bursement for any property that was wrongfully taken or destroyed. The procedure gives the inmate the right to appeal to the Superintendent if his claim is denied. If the inmate is still aggrieved once these steps have been exhausted, he may bring a lawsuit in the New York Court of Claims. In the ordinary course, these procedures afford a prisoner all the process he is due, *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 880 (2d Cir.1996), because they allow him to recover the value of any property that may have been destroyed without authorization. It has been specifically held that the availability of an action in the Court of Claims provides such an adequate post-deprivation remedy for prisoners who claim deprivation of personal property by prison officials. *Love v. Coughlin,* 714 F.2d 207, 209 (2d Cir.1983); *see also Davis v. New York,* 311 Fed.Appx. 397, 398 (2d Cir.2009).

Plaintiff affirmatively alleges that he tried to follow the post-deprivation procedure, but contends that he was prevented from exhausting his administrative remedy in two ways. As recounted above, he filed an administrative claim for reimbursement; that claim was denied. Plaintiff alleges that the person who denied his claim for reimbursement was Officer Allen—the very person who allegedly coerced plaintiff into signing a form authorizing the destruction of the property. Plaintiff claims that this was a procedural irregularity, which violated DOCS Directive A4040 (Am. Compl. at 4.) [5]

Assuming arguendo that allowing Allen to rule on plaintiff's administrative request was a violation of DOCS procedures, plaintiff's remedy was to file an appeal from the denial of his reimbursement claim with Superintendent Marshall. No one has provided any paperwork in connection with

---

5. Directive 4040 is the Inmate Grievance Program, found at 7 NYCRR § 701.1 *et seq.*

any such appeal; I infer that defendants will take the position that no such appeal was ever filed. However, plaintiff alleges that he filed such an appeal, only to have it ignored by Superintendent Marshall. For purposes of this motion to dismiss, I accept plaintiff's allegation as true; plaintiff is obviously familiar with DOCS procedures and appears to the court to be diligent about following them.

■ Viewing the allegations about the post-deprivation remedy most favorably to plaintiff, the essence of his due process claim is that Allen and Superintendent Marshall denied him meaningful access to the post-deprivation remedy that should have been available to him after his property was wrongfully destroyed. *Love* does not bar a claim of denial of a right of access to the courts, *see Morello v. James,* 810 F.2d 344, 348 (2d Cir.1987), so if I have accurately interpreted plaintiff's claim, the fact that he could have pursued reimbursement in the Court of Claims might well be irrelevant.

Regrettably, defendants have not analyzed plaintiff's due process claim from this perspective. Therefore, the court is asking for further briefing. I would like the Attorney General and plaintiff to answer the following (and only the following) questions:

(1) Must plaintiff grieve a claim that he was denied meaningful access to his post-deprivation remedy before this court has jurisdiction to hear the claim? If the answer is yes, it will be dispositive, since plaintiff has not alleged either that he grieved this issue or that he was somehow prevented from grieving it.

(2) Assuming plaintiff's allegation that he filed an appeal to Superintendent Marshall to be true, did Marshall's failure to act on the appeal effectively bar plaintiff from filing suit in the New York Court of Claims? I believe that an inmate can proceed to the next level with a grievance if there is inaction at a lower level; is there some analogous rule that would allow an inmate whose administrative claim languishes to file the lawsuit to which the law entitles him? Will the Court of Claims adjudicate a prisoner claim if the prisoner is prevented from exhausting his administrative remedies due to administrative inaction?

(3) Lower courts in this circuit have held that the refusal or failure to process an inmate's grievance does not give rise to a claim for a violation of due process under Section 1983, *Bumpus v. Canfield,* 495 F.Supp.2d 316, 327–28 (W.D.N.Y.2007); *Cancel v. Goord,* No. 00 Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. March 29, 2001); *Justice v. Coughlin,* 941 F.Supp. 1312, 1316 (N.D.N.Y.1996). The plaintiff's pleading and deposition, taken together, allege only that Superintendent Marshall "failed to respond to my claim appeal" about the "unauthorized destruction of my personal property, also of the evidence of my ongoing disciplinary hearing." Plaintiff alleges that this violated "DOCS law contained in the NYCRR." Am. Cplt. Supplemental Statement of Claim at 4–5. Assuming this to be the law, does inaction on an administrative claim that results in the deprivation of an inmate's property (which is not, strictly speaking, a grievance) give rise to a constitutional claim? If it does, does that mean that plaintiff cannot maintain his deprivation of due process claim against Superintendent Marshall, even though it was the superintendent's alleged inaction that allegedly deprived plaintiff of meaningful access to his post-deprivation remedy? Or does it mean instead that plaintiff has a right of immediate access to this court to address his constitutional claim?

(4) Since plaintiff had the opportunity to raise any procedural irregularity at the initial review level on appeal to the Super-

intendent, is there any basis on which the denial of meaningful access claim can be maintained against Allen?

The parties have 30 days (four weeks) from the date of this decision to file briefs addressing these issues. I would appreciate it if the Attorney General in particular would do a little digging into the law before responding to the Court's questions.

All of this, of course, is without regard to whether plaintiff's property was rightfully slated for destruction because it was altered and so constituted contraband, as well as whether plaintiff himself voluntarily authorized its destruction, as defendants contend. Notwithstanding defendants' effort to inject them into this proceeding, these are issues that cannot be resolved on a motion to dismiss, as opposed to a motion for summary judgment.

## V. Certain of Plaintiff's Claims Against Superintendent Marshall Are Dismissed

██ Claims against Superintendent Marshall in his official capacity are, of course, barred by the doctrine of sovereign immunity. (*See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Koehl v. Dalsheim*, 85 F.3d 86, 88–89 (2d Cir.1996)).

██ As to claims against the Superintendent in his individual capacity, it is well settled that "affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983." *Manley v. Mazzuca*, No. 01 Civ. 5178, 2007 WL 162476, at *10, 2007 U.S. Dist. LEXIS 4379, at *33 (S.D.N.Y. Jan. 11, 2007). Therefore, no claim would lie against Marshall for his role in the grievance appeals process.

Plaintiff's supervisory liability claims against Marshall must also be dismissed to the extent that the underlying claims against Allen and Harris are dismissed.

The Court will address the due process deprivation of property/denial of access claim after it receives the parties' additional briefs.

## VI. Plaintiff's Motion for Summary Judgment

On August 24—well after the deadline for filing motions for summary judgment—plaintiff filed what purported to be a motion for summary judgment in this action. In fact, it is not a motion for summary judgment. The text of the document indicates that it is a motion seeking to amend the *ad damnum* clause of the amended complaint. It may also be an effort to add claims to the complaint arising out of some incident involving Corrections Officer Harris that took place in January 2009.

The facts relating to that incident are allegedly set forth in an affidavit that was filed with the court last February, in opposition to defendants' motion to dismiss. The February affidavit states that, on the evening of January 29, 2009, defendant Harris was observed entering plaintiff's cell block, carrying a dark colored plastic shopping bag that looked "weightless" but appeared as though it might have contained papers. Apparently two days later, the other inmates in plaintiff's cell block "were acting unusually peculiar around me. One even began singing sex offense rap songs." Plaintiff asked for an inquiry about whether Harris had any business in Cell Block A on January 29 and for an accounting of what was in the bag—which, the court notes, is none of plaintiff's business.

In his most recent filing, plaintiff asserts that Harris is now a former corrections officer, and that he has been arrested and accused of criminal behavior. No details are offered, but plaintiff avers, in essence, that something fishy was going on between Harris and the inmates on that January

night. Plaintiff seeks leave to file additional charges against Harris, including "criminal charges" and violations of New York's Hale Crimes Law and the Corrections Law.

 To the extent that plaintiff seeks leave to amend his complaint to assert these new charges, that application is denied. Plaintiff has no right, let alone a right of constitutional dimension, to an accounting of why Harris was in Cell Block A on January 29, 2009. Plaintiff has not affirmatively pleaded that he ever filed a grievance concerning the events of January 29, 2009, which effectively ousts the court of jurisdiction. Only a prosecutor can file criminal charges against a citizen, and violations of New York's Hate Crimes Law and the Corrections Law do not give rise to constitutional claims that are cognizable in this court under 42 U.S.C. § 1983. In short, it would be futile to grant plaintiff leave to amend his pleading, because the claims would immediately be dismissed on the merits.

The court has already addressed plaintiff's request for leave to amend his *ad damnum* clause.

### VII. Plaintiff's Motion in Limine

Finally, it appears from the docket sheet that plaintiff filed something captioned a Motion in Limine last April 20 (Docket No. 34). The Court does not have a copy of this motion and has no idea what it is about. However, the motion is denied without prejudice as premature, In limine motions deal with evidentiary matters and are not to be filed until the eve of trial. If we get that far, plaintiff will be told when it is time to file such a motion.

### *CONCLUSION*

Plaintiff's motion to dismiss the complaint as to Defendant Harris is granted. Plaintiff's motion to dismiss the complaint as to Defendants Allen and Marshall is granted except insofar as he has asserted a claim for deprivation of his three items of property; as to that, the motion to dismiss is denied, without prejudice to the making of a proper motion for summary judgment after the record concerning plaintiff's alleged deprivation of meaningful access to his post-deprivation remedy is developed.

This constitutes the decision and order of the court. The Clerk is directed to close the motions found at Docket Nos. 22, 34, and 35.