John Willis **RICHARD,** Plaintiff,

v.

Brian **FISCHER,** Commissioner DOCS; Anthony Annucci, Deputy Commissioner and Counsel of DOCS; Karen Bellamy, Assistant Director of Grievance, DOCS; Ms. Dignean, Senior Correctional Counselor, Five Points

Correctional Facility; Lt. Giannino, Lieutenant, Five Points Correctional Facility; G. Guiney, Deputy Superintendent of Security, Five Points Correctional Facility; Christopher Lindquist, Assistant Director of Grievance, DOCS; John Nuttall, Deputy Commissioner of Programs, DOCS; N. Parrish, Educational Supervisor, Five Points Correctional Facility; Thomas Poole, Superintendent of Five Points Correctional Facility; Commissioner, Mr. Albert Prack, Director of Special Housing Unit Program, DOCS; Thomas Tanea, Senior Correctional Counselor, Five Points Correctional Facility; and Ms. Zenzen, Deputy Superintendent of Programs, Five Points Correctional Facility, Defendants.

No. 11–CV–6013 EAW.

United States District Court,
W.D. New York.

Signed Aug. 7, 2014.

344

John Willis Richard, Fallsburg, NY, pro se.

J. Richard Benitez, NYS Attorney General's Office, Rochester, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### INTRODUCTION

*Pro se* Plaintiff John Willis Richard ("Plaintiff") brings this action against Defendants Brian Fischer, Anthony Annucci, John Nuttall, Karen Bellamy, Christopher Lindquist, Albert Prack, Thomas Poole, Sheryl Zenzen, Gerard Guiney, Norman Parrish, Andrew Giannino, Jennifer Dignean, and Thomas Tanea (collectively "Defendants") pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, alleging discrimination based on his race and religion, and retaliation. (Dkt. 1). Plaintiff's claims against the Defendants in their official capacities previously were dismissed on March 30, 2011. (Dkt. 11). Presently before the Court is Defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. 14). For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part. Defendants' motion is granted as to all causes of action except as to Plaintiff's First Amendment retaliation claim against Defendant Thomas Tanea, and equal protection claim pursuant to 42 U.S.C. § 1983 against Defendants Jennifer Dignean and Thomas Tanea.

### BACKGROUND

The statement of facts that follows is based on the allegations contained in Plaintiff's complaint. Plaintiff, a multiracial inmate, alleges that Defendants unlawfully discriminated against him on the basis of race and religion and retaliated against him for filing grievances while he was an inmate at Five Points Correctional Facility ("Five Points") in Romulus, New York. (Dkt. 1 at ¶¶ 4, 24, 188–189).

Plaintiff's allegations arise from Defendants' denial of employment opportunities by adopting and enforcing against him an alleged unwritten policy that inmates may not obtain employment outside of their cellblock. Specifically, Plaintiff, who was housed in 9–block at Five Points, alleges that he initially was denied employment in 10–block by Defendant Jennifer Dignean ("Dignean") based on racial and religious discrimination. Dignean allegedly called Plaintiff "black ... Muslim or five percen-

ter ... a mixed race mutt black." (*Id.* at ¶¶ 14, 24). Plaintiff further alleges that he was targeted by Dignean because he allegedly killed a white male. (*Id.* at ¶ 236).

On March 28, 2007, Plaintiff filed grievance FPT–17029–07 related to the denial of employment outside his cellblock, citing "racial and attempted religious discrimination and harassment...." (*Id.* at ¶ 24). Plaintiff alleges that his grievance was received by Defendants Zenzen, Poole, and Bellamy, but they rejected his claims because they were engaged in a conspiracy to protect Dignean and themselves by undermining the grievance process, including enforcing an unwritten employment policy, failing to adequately investigate Plaintiff's grievance, and failing to interview witnesses. (*Id.* at ¶¶ 27–55).

Plaintiff alleges that he again requested employment in 10–block utility from Dignean on May 9, 2007. (*Id.* at ¶¶ 59, 62). At that time, Dignean was allegedly training Defendant Thomas Tanea ("Tanea") to handle these requests. (*Id.* at ¶¶ 60–61). Dignean again denied Plaintiff employment in 10–block, stating that he could be assigned to a 9–block program only. (*Id.* at ¶ 62). Plaintiff alleges that Dignean stated, "we already went through this before Mr. Richard ... [y]ou filed a grievance on that [and] the superintendent sided with me! [N]ot you! I'm giving you a 9 block program." (*Id.*). When Plaintiff contested Dignean's statement by stating that he "[had] a case," that "Poole only protected you, like he do all of his employees," and that the employment policy was "not in writing," Dignean allegedly responded that

Plaintiff would "lose again, we run this facility the way we want to, you'll see." (*Id.*).

As a result of the alleged conspiracy, Plaintiff filed a complaint with Defendant Nuttall "outside of the grievance process" on May 11, 2007. (*Id.* at ¶¶ 56–57). The complaint contained charges of "1) Incompentency 2) Abuse of Authority 3) Failure in the performance of her duties 4) Failure to properly supervise subordinates 5) Making in house/unwritten rules without notice 6) Filing false reports." (*Id.* at ¶ 58). In his complaint, Plaintiff requested that Defendants produce in writing the employment policy allowing them to deny him an "8, 10, 11 block program, because [he was] already housed in 9 block...." (*Id.* at ¶ 63).[1] Plaintiff alleges that the policy never was produced. (*Id.* at ¶ 64).

Plaintiff alleges that on June 14, 2007, he was called for a 9–block program that he did not request by Tanea. (*Id.* at ¶ 65). Plaintiff refused the program and asked to be placed on the 10–block waiting list. (*Id.*). Tanea allegedly "directly refused, smiling" and had a "hidden agenda" motivated by "retaliation and racism." (*Id.*). Plaintiff further alleges that Tanea threatened him with "KL[2] in order to force [him] to take only a 9 block program," and that Tanea denied him employment outside of 9–block in retaliation for his filing grievances. (*Id.* at ¶¶ 65–66). Plaintiff also alleges that Tanea refused to place Plaintiff on a waiting list for his requested programs, despite the fact that waiting

---

**1.** Plaintiff alleges that his May 11, 2007 grievance was revised on June 23, 2007. (Dkt. 1 at ¶ 60). It is unclear from Plaintiff's complaint whether this allegation was contained in Plaintiff's May 11, 2007 grievance or his June 23, 2007 grievance.

**2.** "KL" stands for "keep lock," which is a restricted status where an inmate is "confined to his own cell and is deprived of almost all contact with the rest of the prison population and participation in the normal routine of the institution...." *Williams v. Smith,* 781 F.2d 319, 321 (2d Cir.1986) (internal quotations and citation omitted).

lists were open to all other inmates appearing before him. (*Id.* at ¶ 70).

Plaintiff filed a grievance as a result of his exchange with Tanea on June 20, 2007. (*Id.* at ¶ 65). In the grievance, Plaintiff also attacked the dismissal of his prior grievances and alleged unfair hearing procedures. (*Id.* at ¶¶ 102–104). Plaintiff alleges that his June 20, 2007 grievance was not responded to, so he filed another grievance, FPT–10871–07, and attached the June 20, 2007 grievance as an exhibit. (*Id.* at ¶¶ 105–106). In his June 20, 2007 grievance, Plaintiff alleges that he requested a definition for the word "harassment" and that the Department of Corrections (DOCCS) must "properly define it, regardless, and post it, per Corr. Law ... So when we file grievances, we know how to properly recognize it, and have sufficient evidence to support." (*Id.* at ¶ 107). Plaintiff alleges that this request was included in his prior grievances, but Defendant Bellamy intentionally refused to provide a specific definition in order to isolate Plaintiff to 9–block "by racism, discrimination, unequal protection and continued conspiracy." (*Id.* at ¶¶ 108–109, 111). Plaintiff alleges that Defendant Bellamy "again condoned her subordinates in a conspiracy of upholding an unwritten rule stating 'the grievant was offered a job ... on 9 block.'" (*Id.* at ¶ 110).

Plaintiff's remaining allegations concern the disciplinary hearings related to his refusal to accept alternative employment positions. Plaintiff alleges that Tanea "manipulatively and conspiratorily wrote a 6/14/07 retaliation, racist, discriminatory unequal protection report" to punish Plaintiff for his refusal of an employment position in 9–block, and in response to his grievances. (*Id.* at ¶¶ 66–67). Plaintiff alleges that Tanea's disciplinary report "plays a major part in retaliation" because he "cannot write a report for 'refusal' of

programs when 'waiting lists' are clearly open to *everybody appearing before him.*" (*Id.* at ¶ 70) (emphasis in original).

Plaintiff alleges that the disciplinary hearing officer, Defendant Giannino ("Giannino"), "sabotage[d]" his disciplinary hearing once he realized that Plaintiff had a valid defense to the disciplinary report. (*Id.* at ¶¶ 75–77). Specifically, Plaintiff alleges that Giannino improperly interrupted him and other witnesses, did not allow Plaintiff to "counter" the testimony of other witnesses, and denied him possession of documents to support his defense. (*Id.* at ¶¶ 78, 89, 96). Plaintiff also alleges that Tanea lied at the disciplinary hearing by testifying that he did not have knowledge of Plaintiff's prior grievances and complaints, and that it was facility policy for every prisoner to have two programs. (*Id.* at ¶¶ 83–84). Plaintiff alleges that Giannino found him guilty in order to "protect staff from misconduct." (*Id.* at ¶ 95). Plaintiff allegedly "served 30 days" for the violations contained in Tanea's disciplinary report. (*Id.* at ¶ 155).

On June 20, 2007, Plaintiff appealed the disciplinary hearing on the grounds that Giannino violated rules and regulations, was biased, and had an "intent to conspire and racially find [him] guilty." (*Id.* at ¶ 97). Plaintiff alleges that the appeal was denied by Defendant Guiney, Deputy Superintendent for Security at Five Points, who was designated by Defendant Poole to review the appeal on his behalf. (*Id.* at ¶¶ 98–99).

On July 22, 2007, Plaintiff wrote a letter to Tanea "outlining his improper conduct" and requesting a 10– or 11–block program. (*Id.* at ¶¶ 156–157). Plaintiff did not receive a response, so he wrote a second letter on August 5, 2007, and a third letter on August 19, 2007. (*Id.* at ¶¶ 158–161). Tanea allegedly never responded to any of Plaintiff's letters. (*Id.* at ¶ 162). As a re-

sult, Plaintiff filed grievance FPT–17830–07 on August 22, 2007, stating that he did not receive a "callout" to date, was keeplocked for refusing a 9–block program, had filed a June 20, 2007 grievance to which he did not receive a response, and that he wanted his two programs and would not accept a program in 9–block. (*Id.* at ¶ 163). The grievance committee responded that Plaintiff would be placed on "call out" to speak with the program committee. (*Id.* at ¶ 164).

On September 5, 2007, Plaintiff appeared before the "program committee of Thomas Tanea" at his own request and presumably as a result of his August 22, 2007 letter, regarding his refusal to take a 9–block program on June 14, 2007. (*Id.* at ¶¶ 125–126). At that time, Plaintiff asked Tanea for a written policy supporting the restriction of Plaintiff's employment to 9–block, but Tanea refused to provide the policy to Plaintiff. (*Id.* at ¶ 127). Plaintiff again requested and was denied a 10–block program. (*Id.* at ¶ 129). Tanea then issued Plaintiff a 9–block program, which he refused. (*Id.* at ¶¶ 130–131).

Plaintiff alleges that, as a result of his refusal to accept the 9–block program, Tanea "wrote a 9/5/07 disciplinary report in retaliation, racism, discrimination and in a continued conspiracy … to punish me, and deny me equal protection of programs." (*Id.* at ¶ 131). Tanea's report allegedly stated that Plaintiff was assigned to lawns and grounds; that it was explained to Plaintiff that there were no job openings in 10–block; and that Plaintiff was "advised … of the ramifications of his refusal…." (*Id.* at ¶ 166). Plaintiff further alleges that Tanea "manipulated his report to rely on a possible delay in programs to give away all available programs in 10–block," and that the September 5, 2007 retaliation report was written because "it effectively enforced an unwritten rule,

policy to specifically keep [Plaintiff] in 9–block." (*Id.* at ¶¶ 168, 170).

At the disciplinary hearing resulting from Tanea's September 5, 2007 report, Plaintiff alleges that he presented a defense that the report was written in retaliation, discrimination, and conspiracy (*id.* at ¶ 134), but Defendant Parrish, Educational Supervisor at Five Points, sabotaged his hearing by denying him the ability to present witnesses on the grounds that testimony from such witnesses was not material or relevant to the incident (*id.* at ¶¶ 136–139). Plaintiff was found guilty of the charges in Tanea's report on September 13, 2007, and was given "90 day SHU solitary confinement." (*Id.* at ¶¶ 146–147). Plaintiff appealed the decision on September 20, 2007. (*Id.* at ¶ 148). The appeal was denied by Defendant Prack, Director of the Special Housing Unit, on November 15, 2007. (*Id.* at ¶¶ 149–150).

Following the disciplinary hearing, on December 5, 2007, Plaintiff filed grievance FPT–18071–07, regarding alleged procedural violations at the disciplinary hearing. (*Id.* at ¶ 172). Plaintiff alleges that Defendant Lindquist, CORC Director, denied the grievance to protect Defendants Dignean, Zenzen, Poole, Tanea, and Prack. (*Id.* at ¶ 176). The grievance was denied on the grounds that the subject matter of the grievance was addressed by a prior grievance; that Defendants went on the record denying any improper action towards Plaintiff; and that Plaintiff did not present sufficient evidence to substantiate any malfeasance by Defendants. (*Id.* at ¶ 178).

Plaintiff filed this action on December 3, 2010. (Dkt. 1). On June 28, 2011, Defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) arguing that: (1) Plaintiff has failed to allege facts necessary to support any constitutional violation for a 42 U.S.C. §§ 1983, 1985, or

1986 claim, because inmates do not have a constitutional right to employment during incarceration; (2) Plaintiff has failed to state an equal protection claim because he fails to allege that he was treated differently than similarly-situated inmates; (3) Plaintiff has failed to allege an adverse action sufficient to state a retaliation claim; (4) Plaintiff's due process claims must be dismissed; and (5) Plaintiff's claims that DOCCS employees violated their handbook and New York Correction Law fail to allege a constitutional violation. (Dkt. 15). Plaintiff submitted response papers that were filed on July 21, 2011. (Dkt. 18). The case was transferred to the undersigned on February 21, 2014 (Dkt. 21).

## DISCUSSION

### I. Legal Standard

" 'In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.' " *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir. 1991)). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Turkmen v.*

*Ashcroft,* 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki,* 516 F.3d 50, 56 (2d Cir.2008) (alteration in original) (internal quotations and citations omitted).

In addition, "[i]t is well-settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States,* 260 F.3d 78, 83 (2d Cir. 2001) (internal quotations and citation omitted); *see also Hemphill v. New York,* 380 F.3d 680, 687 (2d Cir.2004) (alteration in original) (internal citation omitted) ("It is well-established that 'when [a] plaintiff proceeds *pro se* ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.' "). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir.1984). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and thread-

bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009)). A court may not "invent factual allegations [plaintiff] has not pled." *Id.*

## II. Plaintiff's Conspiracy Claims

Plaintiff's first cause of action is that Defendants conspired to deny him his civil rights under 42 U.S.C. §§ 1983, 1985, and 1986, by adopting an unwritten policy which prevented him from obtaining employment outside of his cellblock. (Dkt. 1 at ¶ 231). Defendants argue that Plaintiff's claims must be dismissed because Plaintiff does not have a property interest in employment while incarcerated, and because Plaintiff's claims are barred by the intracorporate conspiracy doctrine. (Dkt. 15 at 4–6). As discussed below, Plaintiff's conspiracy claims are dismissed as barred by the intracorporate conspiracy doctrine.

### A. Requirements of a § 1983 Conspiracy Claim

When a plaintiff asserts a conspiracy claim pursuant to § 1983, he must allege both the underlying § 1983 cause of action and a conspiracy. A plaintiff's § 1983 conspiracy claim fails if he is unable to allege the underlying § 1983 cause of action. *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir.2009). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

> be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

Despite these protections, "[n]ot every state law tort becomes an actionable constitutional tort under section 1983 because it was committed by a state actor . . . our initial inquiry is whether the alleged actions, if taken as true, deprived [plaintiff] of a constitutional right." *Bisignano v. Harrison Cent. Sch. Dist.*, 113 F.Supp.2d 591, 595–96 (S.D.N.Y.2000) (citing *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) and *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)). "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of [his] federal statutory rights, or [his] constitutional rights or privileges." *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir.1998) (citing *Eagleston v. Guido*, 41 F.3d 865, 872 (2d Cir.1994)). Pleadings pursuant to § 1983 must contain "more than mere conclusory allegations. . . ." *Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir.1988).

Defendants argue that Plaintiff is unable to satisfy the second prong of the § 1983 analysis, which requires that a plaintiff has a property interest in the benefit of which he is allegedly being deprived. (Dkt. 15 at 5). "'[T]o have a property interest in a benefit, a person . . . must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir.2009) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Defendants argue that Plaintiff does not have a constitutionally-protected

interest in his prison employment. (Dkt. 15 at 5).

Defendants are correct that "[t]he Constitution [of the United States] does not create a property or liberty interest in prison employment. Therefore, any such interest must be created by state law by language of an unmistakably mandatory character." *Ingram v. Papalia*, 804 F.2d 595, 596–97 (10th Cir.1986) (internal quotations and citations omitted); *see also Johnson*, 569 F.3d at 44 (noting that a prisoner in a New York State correctional facility does not have a liberty interest in a particular job assignment); *Frazier v. Coughlin*, 81 F.3d 313, 318 (2d Cir.1996) (stating that a prisoner in a New York State correctional facility "has no protected liberty interest in a particular job assignment.") (per curiam); *Hodges v. Jones*, 873 F.Supp. 737, 745 (N.D.N.Y.1995) (holding that inmates do not have a constitutional right to a particular position of employment); *Cooper v. Smith*, 99 A.D.2d 644, 471 N.Y.S.2d 932, 933 (4th Dep't 1984), *aff'd*, 63 N.Y.2d 615, 479 N.Y.S.2d 519, 468 N.E.2d 701 (1984) ("Petitioner had no statutory guarantee that he would keep his kitchen job and prison officials could remove him from that assignment at any time without a hearing.").

Despite the fact that an inmate does not have a property interest in employment while incarcerated, prison officials cannot discriminate against an inmate in the distribution of work assignments. *Reynolds v. Barrett*, 741 F.Supp.2d 416, 425–26 (W.D.N.Y.2010), *aff'd*, 685 F.3d 193 (2d Cir.2012) ("Although a prison inmate 'has no right to any particular prison job, ... prison officials cannot discriminate against him on the basis of his race in work assignments.'") (quoting *LaBounty v. Adler*, No. 89 Civ. 4242(RO), 1999 WL 961776, at *2, 1999 U.S. Dist. LEXIS 16179, at *6 (S.D.N.Y. Oct. 21, 1999)).

Therefore, Defendants' broad assertion that Plaintiff cannot state a § 1983 claim for denial of employment outside of his cellblock is inaccurate in this context because Plaintiff alleges that he was denied employment based on his status as a mixed-race, Muslim inmate.

### B. Requirements of §§ 1985 and 1986 Conspiracy Claims

Section 1985 protects against conspiracies that interfere with an individual's civil rights. Similar to § 1983, section 1985 also requires a plaintiff to plead a violation of a constitutional right. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987) ("complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights ...'"); *see also Ellison v. Evans*, No. 13 Civ. 885(KBF), 2013 WL 5863545, at *3–4, 2013 U.S. Dist. LEXIS 156293, at *12 (S.D.N.Y. Oct. 31, 2013) (dismissing claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, because plaintiff failed to adequately allege federal constitutional violations).

Furthermore, "[s]ection 1986 imposes liability on an individual who has knowledge of discrimination prohibited under § 1985." *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir.1996). A valid § 1986 claim is contingent on a valid § 1985 claim. *Id.* (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir.1993)).

### C. Plaintiff's Conspiracy Claims

Although as a general principle Plaintiff may assert civil rights claims based upon alleged discrimination on the basis of race and religion in work assignments, the intracorporate conspiracy doctrine bars Plaintiff's conspiracy claims based upon this alleged constitutional violation.

To state a conspiracy claim, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999). The intracorporate conspiracy doctrine provides that "if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own . . . officers[ ] and employees, each acting within the scope of his employment[,] there can be no actionable conspiracy." *O'Diah v. Neth*, No. 6:10–CV–6592(MAT), 2013 WL 6440610, at *4, 2013 U.S. Dist. LEXIS 175414, at *12 (W.D.N.Y. Dec. 9, 2013) (internal quotations and citation omitted) (alteration in original).

The intracorporate conspiracy doctrine "bars conspiracy claims against employees of entities such as [DOCCS] (when those employees are alleged to have conspired solely with each other) unless, pursuant to the doctrine's 'scope of employment' exception, the employees were pursuing personal interests wholly separate and apart from the entity by whom they were employed." *Graham v. Peters*, No. 13–CV–705JTC, 2013 WL 5924727, at *5, 2013 U.S. Dist. LEXIS 156509, at *15–16 (W.D.N.Y. Oct. 31, 2013); *see also Liner v. Fischer*, No. 11 Civ. 6711(PAC)(JLC), 2013 WL 3168660, at *11 n. 12, 2013 U.S. Dist. LEXIS 88147, at *36 n. 12 (S.D.N.Y. June 24, 2013) (dismissing § 1983 conspiracy claim where all defendants were DOCCS employees acting within the scope of employment); *Vega v. Artus*, 610 F.Supp.2d 185, 205–06 (N.D.N.Y.2009) (dismissing Plaintiff's conspiracy claims pursuant to the intracorporate conspiracy doctrine where all of the defendants were DOCCS employees, and all were acting within the scope of their employment); *Little v. City of New York*, 487 F.Supp.2d 426, 441–42 (S.D.N.Y.2007) (dismissing § 1983 conspiracy claim against two police officers who worked for the City of New York pursuant to the intracorporate conspiracy doctrine).

Courts in the Western District of New York apply the intracorporate conspiracy doctrine to bar inmates' conspiracy claims against DOCCS. *See, e.g., Cole–Hoover v. N.Y. Dep't of Corr. Servs.*, 02–CV–00826(M), 2010 WL 2510953, at *3–4, 2010 U.S. Dist. LEXIS 60002, at *12 (W.D.N.Y. June 17, 2010) (declining to reinstate plaintiff's conspiracy claim, which was dismissed as a matter of law based on the intracorporate conspiracy doctrine); *Borrello v. N.Y. State Dep't of Corr. Servs.*, No. 00–CV–177A, 2004 WL 2191565, at *2, 2004 U.S. Dist. LEXIS 19926, at *8 (W.D.N.Y. Sept. 27, 2004) (denying plaintiff's motion to amend her complaint, including her conspiracy claim, because "this Court's previous Decision and Order dismissing plaintiff's conspiracy claim relied in part on the application of the intracorporate conspiracy doctrine. The allegations in the Proposed Amended Complaint pertain to individual defendants all of whom are or were employees of [DOCCS] at the time of the events alleged, and therefore, the Court's prior determination applying the intracorporate conspiracy doctrine is sufficient to deny plaintiff's motion to amend the complaint to reallege the conspiracy claim.").

Although there is an exception to the intracorporate conspiracy doctrine "when individuals pursue personal interests wholly separate and apart from the entity . . . Plaintiff does not allege facts plausibly suggesting that each Defendant possessed an independent personal purpose. . . ." *Vega*, 610 F.Supp.2d at 205–06 (internal quotations and citation omitted). At the time of the events alleged in the complaint,

Defendants were DOCCS employees, acting within the scope of their employment; specifically, their duty of assigning work positions to inmates and other acts related to the administration of the Five Points facility. Accordingly, Plaintiff's conspiracy claims against Defendants are barred by the intracorporate conspiracy doctrine, and are dismissed.

## III. Plaintiff's Equal Protection Claim Pursuant to 42 U.S.C. § 1983

To the extent that Plaintiff's second cause of action alleges that Defendants denied him equal protection by restricting him to employment opportunities in 9–block when similarly-situated inmates were not restricted to employment within their cellblock (Dkt. 1 at ¶¶ 232–236), Plaintiff has stated a plausible claim pursuant to § 1983. Specifically, Plaintiff claims that he was discriminated against based on his race and religion during employment placement. (Id. at ¶ 24). Because Plaintiff has alleged sufficient facts to state an equal protection claim, Defendants' motion to dismiss this claim is denied.

The Equal Protection Clause of the United States Constitution mandates equal protection under the law, and that similarly-situated persons are treated equally. To allege a violation of the Equal Protection Clause, "it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently." Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir.1994). The allegation that a plaintiff was treated differently than others similarly situated is "essential" to an equal protection claim.[3] Butler v. City of Batavia, 545 F.Supp.2d 289, 292 (W.D.N.Y.2008), aff'd, 323 Fed.Appx. 21 (2d Cir.2009) (plaintiffs, a homosexual couple, satisfied the first element of an equal protection claim by alleging that defendants failed to take appropriate action when they complained about a sex offender living near a school in their neighborhood, but defendants did take action when a similarly-situated heterosexual couple complained of the same).

Furthermore, "[e]qual protection claims under § 1983 cannot be based solely on the disparate impact of a facially neutral policy. It is well established that ... racially discriminatory intent or purpose is required to [allege] a violation of the Equal Protection clause." Reynolds v. Barrett, 685 F.3d 193, 201 (2d Cir.2012) (internal quotations and citation omitted) (alteration in original).

"Although a prison inmate 'has no right to any particular prison job, ... prison officials cannot discriminate against him on the basis of his race in work assignments.'" See Reynolds, 741 F.Supp.2d at 425–26 (quoting LaBounty, 1999 WL 961776, at *2, 1999 U.S. Dist. LEXIS 16179, at *6). Racial and/or religious discrimination in prisoner job assignments is a violation of the Equal Protection Clause. LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir.1991); Bussey v. Phillips, 419 F.Supp.2d 569, 588–89 (S.D.N.Y.2006). Plaintiff alleges that he was denied em-

---

**3.** "A plaintiff who ... alleges an express racial classification, or that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner or that a facially neutral statute or policy with an adverse effect was motivated by discriminatory animus, is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection." Pyke v. Cuomo, 258 F.3d 107, 110 (2d Cir.2001); see also Alfaro v. Labador, 300 Fed.Appx. 85, 87 (2d Cir.2008). Pyke and its progeny can best be understood as standing for the proposition that a plaintiff should not be barred from stating an equal protection claim where he or she is unable to identify a similarly-situated individual.

ployment outside of his cellblock due to his race and religion, both of which qualify as suspect classes.

 Defendants argue that Plaintiff's claim must be dismissed because he has failed to allege that he was treated differently than other similarly-situated inmates. (Dkt. 15 at 7). While Plaintiff does not identify a specific instance in which an inmate outside his protected class was permitted to seek employment outside of his or her cellblock, he does allege that "no other inmate in Five Points Correctional Facility was isolated by programming," which "verifies that I/petitioner was racially discriminated against . . . ." (*id.* at ¶ 234). Plaintiff further alleges that "no other inmate at Five Points Correctional Facility" was restricted to an employment position in his or her cellblock, but that he was isolated to programs in his cellblock, presumably because of his race and religion. *(Id.* at ¶¶ 233–234). Plaintiff also alleges that Tanea refused to place him on a waiting list for his desired program, when waiting lists were open to all others appearing before Tanea. *(Id.* at ¶ 70). In support of his contention that he was discriminated against based on his race and religion, Plaintiff alleges an occasion during which Dignean denied him employment outside of 9–block, and said ". . . you're not going anywhere unless I say so, and I say no . . . your black right . . . Muslim or five percenter . . . oh you're a mixed raced mutt black." *(Id.* at ¶ 24).[4] Plaintiff also alleges that he was targeted by Dignean

because he killed a white man. *(Id.* at ¶ 236).

Construing Plaintiff's allegations in the light most favorable to him, particularly with regard to Plaintiff's *pro se* status, the Court finds that Plaintiff has sufficiently alleged that he was treated differently than similarly-situated individuals. Plaintiff's allegation that he was discriminated against because of his race and religion, coupled with the allegation that others were not subject to the discriminatory employment policy, carries with it the presumption that similarly-situated inmates were not mixed-raced Muslims. Plaintiff has identified, albeit generally a group of similarly-situated inmates who were treated differently. Of course, Defendants may come forward with evidence in a summary judgment motion that, in fact, there were no similarly-situated inmates treated differently than Plaintiff. However, at this early stage of the litigation, Plaintiff has alleged facts sufficient to state an equal protection claim pursuant to § 1983.

 Plaintiff has not alleged an equal protection claim against all of the named Defendants. "To bring a § 1983 claim against a prison official, a plaintiff must allege that individual's personal involvement; it is not enough to simply assert that the defendant is a 'link in the prison chain of command.'" *Frederick v. Sheahan,* No. 6:10–CV–6527(MAT), 2014 WL 3748587, at *2, 2014 U.S. Dist. LEXIS 104246, at *6 (W.D.N.Y. July 29, 2014) (quoting *McKenna v. Wright,* 386 F.3d 432, 437 (2d Cir.2004)). "A complaint

---

4. To the extent Plaintiff alleges that Dignean's comments constituted harassment (Dkt. 1 at ¶ 43), this claim is denied. Verbal harassment is insufficient to support a § 1983 claim. *See Hendricks v. Boltja,* 20 Fed.Appx. 34, 36 (2d Cir.2001) (verbal harassment not actionable where officer told inmate to "get [his] black ass out of the library" and threatened to "smash his head open"); *Bouknight v. Shaw,*

No. 08 Civ. 5187(PKC), 2009 WL 969932, at *3, 2009 U.S. Dist. LEXIS 35402, at *7–8 (S.D.N.Y. Apr. 6, 2009) (allegations that officer called plaintiff a "rat, snitch and a homosexual" failed to state a claim; "[t]hese instances of verbal harassment, standing alone, are insufficient as a matter of law to state a claim for relief under § 1983.").

based upon a violation of Section 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law." *Hernandez v. Sposato,* No. 12–CV–2530 (SJF)(WDW), 2014 WL 3489818, at *4, 2014 U.S. Dist. LEXIS 94611, at *12 (E.D.N.Y. July 9, 2014).

 Plaintiff alleges personal involvement by Defendants Dignean and Tanea, who allegedly violated Plaintiff's equal protection rights by denying him employment outside of his cellblock on several occasions. Plaintiff does not allege that Brian Fischer, Anthony Annucci, Karen Bellamy, Lt. Giannino, G. Guiney, Christopher Lindquist, John Nuttall, N. Parrish, Thomas Poole, Albert Prack, or Ms. Zenzen personally denied him employment outside of his cellblock, or otherwise engaged in any racial or religious discrimination against him. Instead, Plaintiff alleges in a conclusory fashion that these Defendants accepted or participated in the alleged conspiracy to deny him employment outside of his cellblock. These allegations do not satisfy the personal involvement requirement to state a § 1983 claim, and any conspiracy claims are barred by the intracorporate conspiracy doctrine as discussed above at Part II(C). Accordingly, Defendants' motion to dismiss Plaintiff's equal protection claim is denied as to Defendants Dignean and Tanea, but is granted as to the remaining Defendants.

## IV. Plaintiff's First Amendment Retaliation Claim

Plaintiff's third cause of action alleges violations of his First Amendment rights based on the failure to place him in an employment position outside of 9–block after he filed grievances based on his employment situation. (Dkt. 1 at ¶¶ 237–248). Plaintiff alleges that Defendants retaliated against him for his filing grievances in two

ways: first, by denial of employment outside of his cellblock, and second, by the filing of false disciplinary reports. (*Id* at ¶¶ 65–67, 131–132). Defendants argue that Plaintiff has not stated a claim for retaliation because his protected activity, the filing of grievances, occurred before the retaliatory conduct, which Defendants claim is limited to the denial of employment outside of his cellblock. (Dkt. 15 at 10).

## A. Retaliation by Denial of Employment Outside of 9–Block

 To state a First Amendment claim for retaliation, an inmate must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (internal quotations and citation omitted). Plaintiffs in retaliatory motive cases, especially inmates, must plead specific and detailed factual allegations. *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) ("claims by prisoners that particular administrative decisions have been made for retaliatory purposes are prone to abuse. Virtually every prisoner can assert such a claim as to every decision which he or she dislikes.").

 With regard to the first element, it is well-settled that filing a grievance is a protected activity. *Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir.2002) (per curiam). Plaintiff satisfies the second element as well. "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Dawes v. Walker,* 239 F.3d 489, 493 (2d Cir.2001). "Otherwise, the retaliatory act is simply *de minimis* and therefore

outside the ambit of constitutional protection." *Id.* at 493. While Defendants are correct that an inmate has no right to employment while incarcerated (Dkt. 15 at 10), inmates are provided constitutional protections "if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights." *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987) (citing *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986)). Plaintiff alleges sufficient facts supporting his allegation that Defendants, at some point, took adverse actions against him as a result of his filing grievances.

 Plaintiff's claim for retaliation by denying him employment outside of his cellblock fails because he is unable to plausibly allege that the adverse action was causally related to his filing grievances. The protected conduct must be "a substantial or motivating factor in the prison officials' decision to discipline the plaintiff." *Graham v. Henderson,* 89 F.3d at 79. In this case, the adverse action—denial of Plaintiff's request to be placed in employment outside of 9–block—occurred before he filed his first grievance related to the alleged retaliatory employment policy. (Dkt. 1 at ¶¶ 23–25). Therefore, the alleged adverse actions are, "by definition— unconnected to [Plaintiff's] pursuit of [free speech]" (in this case, the filing of grievances). *Duffy v. Evans,* No. 11 Civ. 7605(JMF), 2013 WL 3491119, at *7, 2013 U.S. Dist. LEXIS 97795, at *19 (S.D.N.Y. July 12, 2013). To the extent Plaintiff alleges that he continued to be denied employment outside of 9–block after he began filing grievances, a defendant's consistent treatment of a plaintiff before and after the allegedly protected speech indicates that such speech was not a substantial cause of the adverse action. *Bouknight,* 2009 WL 969932, at *5–6, 2009 U.S. Dist. LEXIS 35402, at *16–17. Accordingly, to the extent he alleges that Defendants retaliated against him by denying him employment outside of his cellblock, Plaintiff's retaliation claim is dismissed.

**B. Retaliation by the Filing of False Disciplinary Reports**

Plaintiff also alleges that Defendants retaliated against him for filing grievances by writing false disciplinary reports. (Dkt. 1 at ¶¶ 66–67, 131–132). Specifically, Plaintiff alleges two instances where Tanea filed disciplinary reports against him in retaliation for Plaintiff's filing grievances. First, Plaintiff alleges that Tanea "wrote a 6/14/07 retaliation, racist, discriminatory unequal protection report" to punish Plaintiff for his prior grievances. (*Id.* at ¶¶ 66– 67). In his complaint, Plaintiff alleges that he filed grievance FPT–17029–07, regarding his denial of employment outside of his cellblock, on March 28, 2007, and a complaint with Defendant Nuttall on May 11, 2007. (*Id.* at ¶ 24, 56–57). Plaintiff also alleges that Tanea was aware of these grievances because he was mentioned in them. (*Id.* at ¶ 68). As a result of Tanea's June 14, 2007 report, Plaintiff "served 30 days." (*Id.* at ¶ 155).

Second, Plaintiff alleges that Tanea retaliated against him for filing grievances by writing "a 9/5/07 disciplinary report in retaliation, racism, discrimination . . . to punish me," and "[t]his intentional punishment was for my prior complaints/grievances . . . ." (*Id.* at ¶¶ 131–132). In his complaint, Plaintiff alleges that he filed grievances prior to the filing of the September 5, 2007 disciplinary report, including a grievance on June 20, 2007, as a result of his exchange with Tanea regarding employment outside his cellblock, and grievance FPT–17830–07 on August 22, 2007. (*Id.* at ¶¶ 65, 163). At the resulting disciplinary hearing, Plaintiff was found guilty of the charges in Tanea's report and

was given 90 days in the Special Housing Unit. (*Id.* at ¶¶ 146–147).

 " '[A] prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of grievances.' " *Johnson v. Eggersdorf,* No. 97–CV–0938, 1999 U.S. Dist. LEXIS 23914, at *4 (N.D.N.Y. Apr. 28, 1999) (citing *Jones v. Coughlin,* 45 F.3d 677, 679–80 (2d Cir.1995)). Retaliating against inmates for filing grievances by filing false disciplinary reports violates the First Amendment. *See Mimms v. Carr,* No. 09–CV–5740 (NGG)(LB), 2011 WL 2360059, at *6–7, 2011 U.S. Dist. LEXIS 61853, at *18–19 (E.D.N.Y. June 9, 2011). In fact, "[o]ur Circuit has held that the filing of a false disciplinary report is a serious enough action that temporal proximity between an inmate grievance and the filing of a report is enough to state a retaliation claim." *Rivera v. Pataki,* No. 04 Civ. 1286(MBM), 2005 WL 407710, at *21–22, 2005 U.S. Dist. LEXIS 2747, at *75–76 (S.D.N.Y. Feb. 14, 2007). Accordingly, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir.2009).

 Plaintiff's complaint alleges that his grievances were filed between one to three months prior to the filing of the alleged retaliatory disciplinary reports by Tanea. Although pled unartfully, Plaintiff has alleged a nexus between his protected activity and the alleged adverse action to state a claim for retaliation. *See White v. New York City Dep't of Educ.,* No. 12 Civ. 1376(CM), 2014 WL 1273770, at *19–20, 2014 U.S. Dist. LEXIS 45419, at *55 (S.D.N.Y. Mar. 28, 2014) (three month time period between protected act and alleged retaliation short enough to support

an inference of retaliation on an appropriate record); *Yarde v. Good Samaritan Hosp.,* 360 F.Supp.2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit an inference of causation.").

 Plaintiff adequately alleges a retaliation claim against Tanea, because he alleges two specific instances in which Tanea filed false disciplinary reports against him in response to grievances filed by Plaintiff. However, Plaintiff does not adequately allege a claim against the remaining Defendants for any retaliation. To state a First Amendment retaliation claim, a plaintiff must allege that each individual defendant " 'was personally involved . . . in the alleged constitutional deprivations.' " *Skehan v. Village of Mamaroneck,* 465 F.3d 96, 106 (2d Cir.2006) (quoting *Gronowski v. Spencer,* 424 F.3d 285, 293 (2d Cir.2005)). Plaintiff has not alleged facts demonstrating that the remaining Defendants retaliated against him by filing false disciplinary reports. Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment claim for retaliation by filing false disciplinary reports is denied as to Defendant Tanea, but is granted as to the remaining Defendants.

## V. Plaintiff's Procedural Due Process Claim Regarding His Disciplinary Proceedings

Plaintiff's third cause of action also alleges violation of his due process rights under the Fourteenth Amendment due to alleged constitutional violations occurring at his disciplinary proceedings. (Dkt. 1 at ¶¶ 241–242).

 It is well-established that inmates have the right not to be deprived of a liberty interest without due process, and that inmates have due process rights in

prison disciplinary hearings. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir.2004). However, "[p]rison inmates charged with disciplinary violations do not have 'the full panoply of rights' afforded to a defendant in a criminal prosecution.'" *Galan v. Laird*, No. 08–cv–267 (NG), 2010 WL 3780175, *1, 2010 U.S. Dist. LEXIS 98864, *4 (E.D.N.Y. Sept. 21, 2010) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). To comply with procedural due process, prison authorities must provide an inmate charged with a violation in a disciplinary hearing with: "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Id.*

It appears that Plaintiff's due process claims are based on two separate events arising from disciplinary hearings regarding Plaintiff's refusal to accept an employment assignment outside of his cellblock. Plaintiff's due process allegations relating to the first set of hearings pertain to the denial of his ability to use certain documents and hearing officer Giannino's bias. (*Id.* at ¶¶ 75–96). The due process violations relating to the second set of hearings concern Plaintiff's inability to call witnesses at the disciplinary hearing presided over by Defendant Parrish. (*Id.* at ¶¶ 134–146).

█ Plaintiff's allegations that he was unable to use certain documents at his disciplinary hearing and that Giannino was biased are conclusory. As noted by Defendants, Plaintiff does not reference a single document denied to him that would have bolstered his defense. (Dkt. 15 at 12). Furthermore, Plaintiff fails to allege facts supporting his claim that Giannino was biased, other than the conclusory assertion that Giannino was engaged in a conspiracy with the other Defendants to deny Plaintiff his desired employment position. "The unsupported allegations that defendant [hearing officer] conspired with the other defendants to retaliate against plaintiff in connection with the disciplinary proceedings ... are insufficient to establish that he was a biased hearing officer." *Brooks v. Rock*, No. 9:11–CV–1171 (GLS/ATB), 2014 WL 1292232, at *30, 2014 U.S. Dist. LEXIS 43848, at *92 (N.D.N.Y. Jan. 17, 2014) (Report and Recommendation), *adopted by* 2014 U.S. Dist. LEXIS 41814 (N.D.N.Y. Mar. 28, 2014); *Washington v. Afify*, 968 F.Supp.2d 532, 541–42 (W.D.N.Y.2013) ("Claims of hearing officer bias are common in § 1983 cases by inmate plaintiffs, and where they are based on purely conclusory allegations, they are routinely dismissed."). Therefore, Plaintiff has failed to state a claim that he was denied due process at his first disciplinary hearing.

█ Plaintiff also claims that he was denied the opportunity to call witnesses at his second disciplinary hearing. While inmates are entitled to call witnesses at disciplinary hearings, hearing officers may deny witness testimony as irrelevant or redundant. *Gonzalez v. Chalk*, No. 13 Civ. 5486(PKC), 2014 WL 1316557, at *7–8, 2014 U.S. Dist. LEXIS 44762, at *21 (S.D.N.Y. Apr. 1, 2014); *see also Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir.1991) (a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony or evidence); *Brooks*, 2014 WL 1292232, at *28, 2014 U.S. Dist. LEXIS 43848, at *85 ("Although due process includes a right to call witnesses, this right is not unfettered. This right may be limited for security reasons, to keep a hearing within reasonable limits, or on the basis of irrelevance or lack of necessity.")

(internal quotations and citations omitted); *Phelan v. Superintendent of the Great Meadow Corr. Facility,* No. 11–cv–06127, 2012 WL 1190169, at *6, 2012 U.S. Dist. LEXIS 49776, at *18 (W.D.N.Y. Apr. 9, 2012) ("The Supreme Court has stated that disciplinary hearing officers must have the discretion to deny witnesses, noting that valid bases for the denial of witnesses would include irrelevance, lack of necessity, and other hazards particular to each case.").

 Here, Plaintiff states in his complaint that he was unable to call his witnesses because Defendant Parrish found that the witnesses "were not material or relevant to the incident." (*Id.* at ¶¶ 136–139). As explained above, the denial of witnesses because their testimony is immaterial or irrelevant is a valid reason for their exclusion. Moreover, Plaintiff provides no factual support for the allegation that the witnesses identified would somehow have provided relevant information, instead just alleging in a conclusory fashion that he should have been allowed to present their testimony. Accordingly, Plaintiff's third cause of action alleging procedural due process is dismissed.

## VI. Plaintiff's First and Fourteenth Amendment Claims

Plaintiff brings his fourth cause of action pursuant to the First and Fourteenth Amendments, for Defendants' alleged violation of their employee manual handbook for staff conduct and certain sections of the New York State Correction Law. (Dkt. 1 at ¶¶ 250–251). Although it is not entirely clear from the complaint, Plaintiff's claims that Defendants violated their employee manual handbook and the New York State Correction Law stem from Defendants' failure to place him in an employment position outside of 9–block, and the grievance process resulting from Plaintiff's employment placement. (*Id.*).

### A. Alleged Violations of Defendants' Employee Manual Handbook for Staff Conduct and the New York Correction Law

Plaintiff lists various staff conduct sections allegedly violated by Defendants:

2.1 Personal conduct . . .

2.2 Lawful comportment . . .

2.7 Affiliations . . .

2.8 non-discrimination . . .

2.12 Language . . .

3.4 Falsification of Records . . .

6.11 . . . carry out the programs and policies . . .

6.13 . . . cooperate, efficient performance . . .

24.1 . . .

(Dkt. 1 at ¶ 250). Plaintiff also lists various sections of the New York State Correction Law, including 42.(b), 45.(3)(4), 46.(4), and civil service laws, rules, policies, and regulations, also allegedly violated by Defendants:

1) Incompetency

2) Abuse of their authority

3) Failure in the performance of his/her duties,

4) Failure to properly supervise subordinates,

5) Making in house/unwritten rules without notice

6) Filing false reports, investigations.

(*Id.* at ¶ 251).

 Although "violations of New York's . . . Corrections Law [does] not give rise to constitutional claims that are cognizable . . . under 42 U.S.C. § 1983," *Jones v. Harris,* 665 F.Supp.2d 384, 404 (S.D.N.Y.2009), Plaintiff arguably alleges that Defendants' violations of their internal policies and the New York State Correction Law deprived him of the due process

protections of the Fourteenth Amendment.[5] "[F]ailure to provide notice of prison rules to inmates is a violation of due process." *Robles v. Coughlin,* 725 F.2d 12, 16 (2d Cir.1983).

██ Plaintiff's allegations regarding the violation of internal policies and the New York State Correction Law are conclusory. Plaintiff merely alleges a laundry list of section numbers violated; he does not explain who specifically violated the alleged sections, when they were violated, or how they were violated. (Dkt. 1 at ¶¶ 250–251). The only section for which Plaintiff makes more detailed allegations is Defendants' alleged violation of Correction Law § 138, for their failure to post the prison employment policy that inmates may only be employed within their cellblock. (*Id.* at ¶¶ 25, 63). New York Correction Law § 138 requires that "[a]ll institutional rules and regulations defining and prohibiting inmates misconduct shall be published and posted in prominent locations within the institution and set forth in both the English and Spanish language." N.Y. Correct. Law § 138(1). Plaintiff misconstrues this section as requiring DOCCS to provide him with notice of all prison rules and not just rules regarding inmate discipline. Because Plaintiff has failed to adequately allege a due process violation, his Fourteenth Amendment claim for Defendants' alleged violation of the New York Correction Law and internal prison policies is dismissed.

**B. Alleged Violations of the Grievance Procedure**

██ Plaintiff also appears to allege a failure to investigate claim, presumably in connection with the grievance process resulting from his denial of employment outside of 9–block. (Dkt. 1 at ¶¶ 32, 42, 45, 49–50, 52–53, 250–251(6)). Specifically, Plaintiff alleges that Defendant Zenzen never interviewed supporting witness Juan Stallworth in the course of investigating his grievances. (*Id.* at ¶¶ 42, 49–52). Plaintiff's claim fails because inmates do not have a constitutional right of access to inmate grievance processes. *Gambino v. Payne,* No. 1:12–CV–0824Sc, 2013 WL 6092506, at *4–5, 2013 U.S. Dist. LEXIS 164396, at *13–14 (W.D.N.Y. Nov. 18, 2013). "[T]he law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly." *Hill v. Napoli,* No. 6:09–CV–6546–MAT, 2014 WL 1322476, at *14, 2014 U.S. Dist. LEXIS 44018, at *40 (W.D.N.Y. Mar. 31, 2014) (internal quotations and citation omitted); *see also Green v. Herbert,* 677 F.Supp.2d 633, 639 (W.D.N.Y.2010) (inmate's allegation that officer who was assigned to investigate his grievance conducted a biased, unfair investigation "fails because an inmate has no constitutional right to have his grievances processed or investigated in any particular manner.") (internal quotations and citation omitted). Accordingly, Plaintiff's claim against Defendants for alleged violations of the inmate grievance procedure is dismissed.

**C. Alleged Filing of False Reports Claim**

██ Plaintiff also alleges that Defendants filed false reports against him.

5. Plaintiff also alleges that Defendants deprived him of the protections of the First Amendment; however, the First Amendment is irrelevant to this analysis. The Court construes Plaintiff's fourth cause of action as seeking relief pursuant to the Fourteenth Amendment. *See Elliot v. Rossetti,* No. 12–

CV–6371L, 2012 U.S. Dist. LEXIS 144039, at *1 (W.D.N.Y. Oct. 4, 2012) ("The Second Circuit has directed that pro se pleadings should be characterized according to the relief sought, and not to the label given to them by pro se prisoners unlearned in the law.").

(Dkt. ¶ 251(6)). With regard to Plaintiff's claim based on falsification of paperwork, Defendants are correct that "[t]he prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout,* 808 F.2d.949, 951 (2d Cir.1986); *see also James v. Artuz,* 1994 WL 174005, at *5, 1994 U.S. Dist. LEXIS 5708, at *18 (S.D.N.Y. May 4, 1994) ("The filing of unfounded charges against an inmate is not a *per se* constitutional violation."); *see also Jackson v. Johnson,* No. 90 Civ. 0661(JSM), 1990 WL 170412, at *4, 1990 U.S. Dist. LEXIS 14286, at *11 (S.D.N.Y. Oct. 26, 1990) ("plaintiff's allegation concerning the falsification of the report fails to state a claim since, even assuming that the report was falsified, it does not appear that this caused plaintiff any harm let alone the deprivation of a constitutional right"). "Rather, to maintain an actionable claim against correction officers for filing a false misbehavior report, the inmate must be able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." *Hill,* 2014 WL 1322476, at *9, 2014 U.S. Dist. LEXIS 44018, at *27. As discussed above, Plaintiff fails to state a due process violation. Further, Plaintiff's claim that Defendants filed false reports relates to his contention that Defendants filed false disciplinary reports against him in retaliation for his filing grievances. This claim is duplicative of Plaintiff's third cause of action for First Amendment retaliation. *See Washington,* 968 F.Supp.2d at 541 (dismissing plaintiff's equal protection claim because his allegations were more properly addressed in the context of his retaliation claims).

Accordingly, Plaintiff's fourth cause of action is dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) is granted in part and denied in part. Defendants' motion is denied as to Plaintiff's second cause of action to the extent it alleges violations of the Equal Protection Clause pursuant to 42 U.S.C. § 1983 against Defendants Dignean and Tanea, and it is further denied as to Plaintiff's third cause of action to the extent it alleges First Amendment retaliation against Defendant Tanea in violation of 42 U.S.C. § 1983. Defendants' motion to dismiss is granted in all other respects. Defendants are directed to file an answer to the remaining causes of action within twenty (20) days of entry of this Decision and Order. The Clerk of the Court is directed to amend the caption of this case to reflect the dismissal of all Defendants, except for Defendants Dignean and Tanea.

SO ORDERED.